<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL III</td></tr>
</table>

| Mildred A. Segarra Boerman<br><br>Querellante<br><br>Vs.<br><br>Negociado de Servicio al Contribuyente<br><br>Querellado | TA2026RA00150 | *REVISIÓN ADMINISTRATIVA* procedente del Negociado de Auditoría Fiscal del Departamento de Hacienda de Puerto Rico<br><br>Querella Núm. S2025-AJ-0047<br><br>SOBRE: IMPUGNACIÓN DE AJUSTE DE PLANILLA 2023 |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 12 de mayo de 2026.

El 30 de marzo de 2026, la señora Mildred A. Segarra Boerman, por conducto de la Sucesión Mildred A. Segarra Boerman (parte peticionaria o señora Segarra Boerman) compareció ante nos mediante un *Recurso de Revisión Judicial* y solicitó la revisión de una *Resolución* que se emitió y notificó el 23 de enero de 2026, por la Oficina de Apelaciones Administrativas del Departamento de Hacienda (OAADH). Mediante el aludido dictamen, la OAADH declaró No Ha Lugar, la querella que presentó la señora Segarra Boerman. Así pues, acogió la determinación realizada por el Negociado se Servicio al Contribuyente del Departamento de Hacienda (Negociado o recurrido) el 26 de diciembre de 2024. En este dictamen, el Negociado que resolvió que la suma de $5,102,387.00, constituyó un ingreso tributable para el año contributivo 2023.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

**I.**

El presente caso tiene su origen el 15 de octubre de 2024, cuando la señora Segarra Boerman presentó su planilla de contribución sobre ingresos de individuos correspondientes al año 2023.[1] En esta reportó que recibió la suma de $5,102,387, por parte de Titín Foundation Inc. (TF), producto de un acuerdo extrajudicial. Imputó dicha cantidad como una partida producto de herencia, por lo cual la excluyó como ingreso bruto, en consecuencia, una suma no tributable.

El 20 de noviembre de 2024, el Departamento de Hacienda remitió a la señora Segarra Boerman una Notificación de Ajuste de Planilla correspondiente al año contributivo 2023.[2] En dicha notificación, señaló que de una revisión de la planilla surgió una discrepancia que resultó en un ajuste. Explicó que ello pudo ser el resultado de diferencias entre la información sometida mediante declaraciones informativas y la información contenida en la planilla radicada. Incluyó los detalles de las modificaciones de las que surgió un ajuste en el Encasillado 1, Inciso 2 (G), para incluir en esta partida la suma de $5,102,387.00. Lo cual tuvo la consecuencia final de ajustar el balance pendiente de pago a $1,092,043.00.

En desacuerdo con la determinación, el 20 de diciembre de 2024, la parte peticionaria presentó una *Solicitud de Reconsideración Procedimiento Expedito de Impugnación de Ajuste de Planilla.*[3] En esta alegó que la partida de $5,102,387.00, que recibió por parte de TF, no representó un ingreso bruto. Explicó que dicha partida fue pagada por TF, entidad que había recibido casi la

---

[1] *Véase*, Entrada Núm. 33 del apéndice del recurso, SUMAC TA.
[2] *Véase*, Entrada Núm. 56 del apéndice del recurso, SUMAC TA.
[3] *Véase*, Entrada Núm. 54 del apéndice del recurso, SUMAC TA.

totalidad de la herencia del Sr. Luis Felipe Segarra Boerman (Hermano o Titín), hermano de la señora Segarra Boerman. Ello como parte de un pago por indemnización relacionado a una demanda en el Tribunal Federal para el Distrito de Puerto Rico. Alegó que en dicha demanda se reclamó la transferencia de la herencia de Titín a TF. Dicha entidad se encontraba bajo el control del Albacea, según dispuesto en el testamento de Titín. Añadió que este testamento fue el eje central del litigio, debido a que Titín fue indebidamente influenciado por los demandados, con el propósito de beneficiarse del caudal hereditario este. Lo cual sostuvo, se resume en la alegación 439 de la demanda, que lee como sigue:

> "In doing the things alleged in this Complaint, Freddie, Freddie's Law Firm, Quiñones-Coll, Alfie, Sofía, Martinal, FSIC, and the Titín Foundation all knew of Freddie's plan to defraud Plaintiffs of their fair shares of the Segarra-Boerman Family wealth, and all of them took affirmative steps to encourage the achievement of that goal including engaging in undue influence, the preparation of Titín's wills to their sole advantage, abusing the trust reposed in them, the preparation of manipulative and cheating letters, closing documents and other legal documents, giving self-interested and deceiving personal advice, involving self-interested advisors related to the buyout of Doña Mildred's interest in FSIC, as described above, all in violation of 33 L.P.R.A. § 3022 (criminal fraud), 33 L.P.R.A. § 5534 (conspiracy to defraud), 33 L.P.R.A. § 4838 (2004) (fraud), 31 L.P.R.A. § 3408 (2004) (deceit), 33 L.P.R.A. § 4872-78 (2004) (conspiracy), 32 L.P.R.A. § 3352t and 14 L.P.R.A. § 3563-64 (breach of fiduciary duty)."

Por lo cual argumentó que, la suma concedida como parte de la transacción, representó una redistribución de la herencia de Titín, por ser la señora Segarra Boerman el familiar más cercano. Pues Titín falleció sin descendientes, ascendientes y sin tener otros hermanos. Alegó que, por consiguiente, esta partida es una que a tenor con la Sección 1031.01(b)(2) de la Ley Núm. 1-2011, según enmendada, mejor conocida como el Código de Rentas Internas de Puerto Rico de 2011, 13 LPRA sec. 30101 (Código de Rentas Internas), se excluye del ingreso bruto y por tanto no es tributable.

Así las cosas, el 26 de diciembre de 2024 el recurrido emitió una *Notificación de Determinación de Reconsideración de Ajuste de*

*Planilla,* en la cual reiteró que procedía el ajuste.[4] Mediante dicha notificación apercibió a la parte peticionaria, que, de no estar de acuerdo con la determinación, tenía derecho a presentar una querella ante la OAADH. Al siguiente día, el Área de Rentas Internas del Departamento de Hacienda remitió a la señora Segarra Boerman una *Notificación de Tasación,* en la que le informó de un balance pendiente de pago, correspondiente al año contributivo 2023, por la cantidad de $1,279, 895.42.[5]

En desacuerdo con dicho dictamen, el 24 de enero de 2025 la parte peticionaria presentó una querella ante la OAADH.[6] En esencia, expresó su inconformidad con la determinación del Negociado y reiteró que la suma en controversia correspondía a una redistribución de la herencia de su Hermano. Indicó esta, fue el resultado de una transacción de una demanda, en la cual fue objeto de litigio, el testamento de Titín. Sostuvo, que su Hermano fue indebidamente influenciado por los allí demandados, con el objetivo de beneficiarse del caudal hereditario de este. Añadió que el pago por la suma de $5,102,387.00, lo emitió TF, pues dicha entidad fue la que recibió casi la totalidad de la herencia. A base de lo anterior concluyó que el pago correspondía a una partida que a tenor con la Sección 1031.01(b)(2) del Código de Rentas Internas, *supra,* es un ingreso excluido del ingreso bruto. Por consiguiente, solicitó que se dejara sin efecto la *Notificación de Determinación de Reconsideración de Ajuste en Planilla y la Notificación de Tasación.*

Posteriormente, el 8 de agosto de 2025 la señora Segarra Boerman presentó ante la OAADH, una *Propuesta de Determinaciones de Hecho y Conclusiones de Derecho y Moción para Solicitar la Orden o Resolución Final de la Querella a Favor de la*

---

[4] *Véase*, Entrada Núm. 52 del apéndice del recurso, SUMAC TA.
[5] *Véase*, Entrada Núm. 29 del apéndice del recurso, SUMAC TA.
[6] *Véase*, Entrada Núm. 50 del apéndice del recurso, SUMAC TA.

*Contribuyente.*[7] Ello fundamentado en que el 23 de julio de 2025 había vencido el término de ciento ochenta (180) días, dispuestos en la Sección 6010.08 del Código de Rentas Internas, *supra,* para que la OAADH celebrara una vista administrativa formal y emitir su determinación.

Examinado el escrito de la parte peticionaria, la OAADH dictó una *Orden* en la que le solicitó a la señora Segarra Boerman que presentara la copia del acuerdo de transacción, que produjo el pago en controversia.[8] Además, le concedió al Negociado un término improrrogable de veinte (20) días para que presentara su contestación a la querella.

En cumplimiento con dicha orden, el 10 de septiembre de 2025, el recurrido presentó una *Contestación a Querella.*[9] En esta se limitó a señalar que la suma en controversia era tributable, pues se trató de un pago por concepto de indemnización judicial o extrajudicial.

Así las cosas, el 22 de septiembre de 2025 se celebró una vista en la cual se notificó el fallecimiento de la señora Segarra Boerman. Por lo que, sus representantes informaron que presentarían un nuevo escrito con las Propuestas de Determinaciones de Hecho y Conclusiones de Derecho. Además, señalaron que entregarían la copia del acuerdo transaccional que dio base a la controversia, así como los documentos pertinentes que los acreditaban como herederos, para así realizar la debida sustitución de parte. Presentados dichos documentos, el caso quedó sometido para adjudicación final, el 23 de octubre de 2025.

---

[7] *Véase,* Entrada Núm. 50 del apéndice del recurso, SUMAC TA.
[8] *Véase,* Entrada Núm. 39 del apéndice del recurso, SUMAC TA.
[9] *Véase,* Entrada Núm. 40 del apéndice del recurso, SUMAC TA.

Tras haber evaluado los argumentos de las partes, el 26 de enero de 2026, el Oficial Examinador emitió una *Resolución*.[10] En esta hizo las siguientes determinaciones de hecho:

1. La Querellante formó parte de una acción civil tramitada ente el Tribunal Federal para el Distrito de Puerto Rico contra Titín Foundation Inc., en la cual se alegaron entre otras causas de acción, violaciones a la Ley RICO, la Ley Lanham, incumplimiento del deber fiduciario, dolo y conspiración.
2. Como resultado de dicha controversia, la Querellante recibió de Titín Foundation Inc., en capacidad de agente retenedor, un Formulario 480.6B correspondiente a Pagos por Indemnización Judicial o Extrajudicial por la suma de $5,102,387.00 con una cantidad retenida de $510,238.70.
3. La Querellante presentó su Planilla de Contribución sobre Ingresos para el año contributivo 2023 el 15 de octubre de 2024, incluyendo el referido Formulario 480.6B.
4. En dicha Planilla, la Querellante reportó la cantidad pagada en el Formulario 480.6B, de $5,102,387.00, en la línea de (Donaciones, mandas, legados y herencias), excluyendo dicho ingreso del Ingreso Bruto.
5. Las Instrucciones del Formulario 480.6B requieren que quien recibe el pago por Indemnización Judicial o Extrajudicial complete la parte V, Columna C del Anejo F y para la cantidad de contribución retenida la parte III del Anejo B de la Planilla.
6. La cantidad de $5,102,387.00, también fue reportada en el Anejo F, Parte V, Columna C. A su vez, dicha partida fue registrada en negativo en la misma sección por la propia Querellante, con el efecto matemático de neutralizar dicha cantidad dentro del anejo F a fin de reflejar contablemente su exclusión como donaciones, mandas, legados y herencias.
7. El 20 de noviembre de 2024, el Departamento notificó a la Querellante un ajuste a su planilla mediante el Modelo SC 6176, entre otras cosas, por diferencias entre la información sometida mediante declaraciones informativas y la información contenida en la planilla radicada y restituyó los $5,102,378.00.
8. El 20 de diciembre de 2024, la Querellante solicitó reconsideración del ajuste, alegando que dicha suma constituye una partida excluida del ingreso bruto conforme a la Sección 1031.01(b)(2) del Código.
9. El 26 de diciembre de 2024, el Departamento determinó denegar su solicitud de reconsideración por falta de evidencia para sostener su solicitud, o por disposición del Departamento con respecto al ajuste notificado y le apercibió sobre su derecho a apelar la determinación en la Secretaria de Procedimiento Adjudicativo.

---

[10] *Véase*, Entrada Núm. 2 del apéndice del recurso, SUMAC TA.

10. El 24 de enero de 2025, la Querellante presentó la presente querella ante la Oficina impugnando la Notificación de Determinación de Reconsideración de Ajuste en Planilla.

11. Transcurrido[s] ciento ochenta (180) días desde la presentación de la Querella, la Oficina no había celebrado la Vista ni emitido determinación final.

12. La querellante falleció el 22 de agosto de 2025, y fue debidamente sustituida por sus herederos o sucesores legales, quienes presentaron el Acuerdo de Transacción y demás documentación ordenada por la Oficina.

13. Del Acuerdo de Transacción sometido surge que el pago de $5,102,387.00 fue producto de un acuerdo para poner fin a controversias litigiosas ante el tribunal federal.

14. La caracterización contributiva del pago como "herencia" surge únicamente del planteamiento unilateral de la parte Querellante y no está sustentada por determinación judicial, adjudicación sucesoria válida, ni por el texto expreso del Acuerdo de Transacción.

Asimismo, en lo referente al planteamiento de la parte recurrida, acerca de que el proceso adjudicativo no culminó dentro del término de ciento ochenta (180) días, según lo dispuesto en la Sección 6010.08 (d), del Código de Rentas Internas, *supra*, concluyó que por no haberse probado que la suma correspondía a una partida producto de una adjudicación sucesoria, tal término no era de aplicación al proceso. Añadió que, por el contrario, del Formulario 480.6B y del acuerdo transaccional surge, que el pago era una contraprestación para resolver reclamaciones litigiosas, y por tanto un claro aumento patrimonial, que resulta en un ingreso tributable. En vista de lo anterior, declaró No Ha Lugar la querella y confirmó la determinación del Negociado.

En desacuerdo con esta determinación, el 12 de febrero de 2026, la parte peticionaria presentó una *Moción de Reconsideración Conforme a la Ley Núm. 38 de 30 de junio de 2017, Según Enmendada.*[11]

Por otra parte, el 23 de febrero de 2026, el Departamento de Hacienda notificó a la parte peticionaria un *Aviso de Embargo* por la

---

[11] *Véase*, Entrada Núm. 4 del apéndice del recurso, SUMAC TA.

suma de $1,529,684.42.[12] Indicó que este correspondía a la deuda por contribuciones no pagadas, multas, intereses, recargos, penalidades y costas.

Transcurrido el término que la ley provee sin que la OAADH se expresara en cuanto a la moción de reconsideración, el 30 de marzo de 2026, la parte peticionaria presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

**ERRÓ LA OFICINA DE APELACIONES ADMINISTRATIVAS DEL DEPARTAMENTO DE HACIENDA AL DETERMINAR QUE LA SUMA DE $5,108,387.00 RECIBIDA POR LA PETICIONARIA CONSTITUYE INGRESO CORRESPONDIENTE AL AÑO CONTRIBUTIVO 2023 TRIBUTABLE.**

**ERRÓ LA OFICINA DE APELACIONES ADMINISTRATIVAS DEL DEPARTAMENTO DE HACIENDA AL INCUMPLIR CON LA SECCIÓN 6010.08(D) DEL CÓDIGO DE RENTAS INTERNAS DE PUERTO RICO DE 2011 QUE ESTABLECE QUE SE DEBERÁ CELEBRAR LA VISTA ADMINISTRATIVA FORMAL Y EMITIR LA DETERMINACIÓN DENTRO DE LOS CIENTO OCHENTA (180) DIAS A PARTIR DE LA SOLICITUD DEL CONTRIBUYENTE Y DE NO EMITIRSE LA DETERMINACIÓN DENTRO DEL TÉRMINO OTORGADO SE DARÁN COMO PROBADAS TODAS LAS CUESTIONES DE HECHO PRESENTADAS POR EL CONTRIBUYENTE EN SU RECONSIDERACION.**

Junto con su recurso, la parte peticionaria presentó una moción en auxilio de jurisdicción, en la que solicitó la paralización de los procedimientos relacionados al embargo. En atención a ello, el 31 de marzo de 2026, decretamos una paralización de los procedimientos y le concedimos al recurrido hasta el 29 de abril de 2026, para presentar su alegato.

El recurrido solicitó prórroga para presentar su alegato y se le concedió hasta el 4 de mayo de 2026. Oportunamente, el recurrido compareció mediante un *Escrito en Cumplimiento de Orden* y negó que el Departamento de Hacienda hubiese cometido los errores imputados por la parte recurrida.

---

[12] *Véase*, Entrada Núm. 19 del apéndice del recurso, SUMAC TA.

Así, con el beneficio de la comparecencia de las partes, conforme al derecho aplicable, resolvemos.

## II.

### -A-

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra*, pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. *Vázquez v. Consejo de Titulares,* supra.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025). Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación

realizada por la agencia administrativa. Íd.  Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

-**B**-

El Artículo VI, Sec. 2 de la Constitución de Puerto Rico encomienda el poder para imponer y cobrar contribuciones a la Asamblea Legislativa. *Pfizer Pharm. v. Mun. de Vega Baja*, 182 DPR 267, 276 (2011). Conforme a dicha encomienda, la Asamblea Legislativa aprobó el Código de Rentas Internas, *supra,* el cual contiene toda la legislación contributiva de nuestro ordenamiento jurídico. Íd.

En particular, y en lo que aquí compete, la Sección 1031.01 del Código de Rentas Internas, *supra*, define término "Ingreso bruto" como todo ingreso, ganancia, o beneficio recibido o derivado de cualquier procedencia. Asimismo, dicha sección especifica que para propósitos contributivos las siguientes partidas se excluyen de la definición de ingreso bruto:

[…]

(2) Donaciones, mandas, legados y herencias. — Se excluirá del ingreso bruto el valor de los bienes adquiridos por donación, manda, legado o herencia. No será excluido del ingreso bruto bajo este párrafo el ingreso derivado de dichos bienes, o en caso de que la donación, manda, legado o herencia consistiere de ingreso derivado de bienes, el importe de dicho ingreso. Para los fines de este párrafo, si bajo los términos de la donación, manda, legado o herencia, su pago, crédito o distribución ha de efectuarse a intervalos, los mismos serán considerados como una donación, manda, legado o herencia de ingreso derivado de bienes hasta la cuantía en que sean pagados o acreditados o hayan de distribuirse de ingreso derivado de bienes.

(3) Compensación por lesiones o enfermedad. — Excepto en el caso de cantidades atribuibles a, pero no

en exceso de, las deducciones concedidas bajo la Sección 1033.15(a)(2)(F) en cualquier año contributivo anterior, las cantidades recibidas por razón de seguros contra enfermedad o accidente o bajo leyes de compensaciones a obreros, como compensación por lesiones físicas personales o por enfermedad física (excepto las cantidades recibidas por un empleado, hasta el monto que dichas cantidades sean pagadas directamente por patrono), más el monto de cualquier indemnización recibida, en procedimiento judicial o en transacción extrajudicial, por razón de dichas lesiones físicas personales o enfermedad física, o indemnización por angustias mentales, y cantidades recibidas como pensión, anualidad o concesión análoga por lesiones físicas personales o enfermedad física, y por razón de incapacidad ocupacional y no ocupacional, incluyendo las que resulten del servicio activo en las fuerzas armadas de cualquier país.

[…]

Ahora bien, cuando se trata de ingresos que se obtienen como resultado de una transacción judicial o extrajudicial, será necesario evaluar cual fue el reclamo en el pleito. En *Lyeth v. Hoey*, 305 US 188 (1938), el Tribunal Supremo de Estados Unidos estableció el estándar a evaluar, para aquellos casos en los que el pleito y acuerdo transaccional está relacionado a una herencia. Allí, se resolvió que las sumas recibidas por un heredero como resultado de un acuerdo transaccional, se consideran distribución hereditaria para efectos contributivos, cuando la controversia surge por su participación en una herencia. Ello así, aun cuando el pago de la herencia sea efectuado mediante transacción judicial o extrajudicial.

En específico el Tribunal Supremo Federal expresó lo siguiente:

> … It was in that situation, facing a trial of the issue of the validity of the will, that the compromise was made by which the heirs, including the petitioner, were to receive certain portions of the decedent's estate.

> There is no question that petitioner obtained that portion, upon the value of which he is sought to be taxed, because of his standing as an heir and of his claim in that capacity. It does not seem to be questioned that if the contest had been fought to a finish and petitioner had succeeded, the property which he would have received would have been exempt under the federal act. Nor is it questioned that if in any

appropriate proceeding, instituted by him as heir, he had recovered judgment for a part of the estate, that part would have been acquired by inheritance within the meaning of the act. We think that the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, as it disregards the substance of the statutory exemption. It does so, because it disregards the heirship which underlay the compromise, the status which commanded that agreement and was recognized by it.

Concluyó, que para determinar si el ingreso producto del acuerdo es herencia y por tanto un ingreso no tributable, el factor a evaluar será el reclamo original y no el acuerdo mediante el cual se resuelve la controversia. Por lo cual, cuando el pago proviene de un derecho hereditario en disputa, para fines contributivos, debe considerarse como una adquisición por herencia y no como un ingreso tributable.

**-C-**

La Sección 6010.08 del Código de Rentas Internas, *supra*, establece el procedimiento expedito para la impugnación de ajustes en la planilla. Este permite la revisión administrativa de determinación contributiva dentro de un proceso sumario, que procura la eficiencia y uniformidad en la adjudicación. En específico dispone lo siguiente:

(a) Procedimiento Expedito. —Todo contribuyente que interese impugnar un Ajuste de Planilla, según dicho término es definido en la Sección 6010.02(g), notificado luego del 31 de diciembre de 2017, seguirá el proceso expedito aquí dispuesto.

(b) Procedimiento ante el Negociado de Auditoría Fiscal.

(1) De identificar un Ajuste de Planilla, el Secretario notificará por correo regular a la última dirección conocida el ajuste encontrado, con una descripción sucinta de la declaración informativa utilizada para determinar el ajuste o el nombre del dependiente que fue reclamado por otro contribuyente.

(2) El contribuyente podrá, dentro de los treinta (30) días siguientes a la fecha del depósito en el correo de la notificación, o dentro de la prórroga que a tal fin le conceda el Secretario, solicitar de éste reconsideración de dicho ajuste. Junto a su

solicitud, el contribuyente deberá incluir sus argumentos de hechos y derechos y toda prueba que quiera sea evaluada por el Negociado de Auditoría Fiscal, por los cuales entiende la planilla informativa en controversia no procede total o parcialmente o las razones por las que tiene derecho a reclamar al dependiente.

(A) Si el contribuyente no solicitare reconsideración en la forma y dentro del término aquí dispuesto, el Secretario tasará el ajuste el cual notificará por correo regular, pudiendo utilizar cualquier mecanismo que se le haya otorgado en ley para su cobro.

(B) Si luego de tasado el ajuste conforme al inciso (A), el contribuyente desea impugnar la misma, deberá solicitar reapertura al Negociado de Auditoría Fiscal. Dicha reapertura tendrá el efecto de detener cualquier gestión de cobros que esté realizando el Departamento hasta tanto el ajuste advenga final y firme.

(C) Nada de lo aquí dispuesto impedirá que el Secretario comience un proceso formal de auditoría.

(3) Solicitada la reconsideración o reapertura, el Secretario podrá requerir al emisor de la planilla informativa o a la persona que reclamó al mismo dependiente que el solicitante, que se exprese sobre los argumentos presentados en la reconsideración.

(4) El Secretario deberá emitir su determinación en un plazo improrrogable de ciento veinte (120) días, mediante correo certificado, a la última dirección conocida del contribuyente. De no emitirse determinación dentro del término otorgado, se entenderán probadas todas las cuestiones de hecho presentadas por el contribuyente en su reconsideración.

(5) Si el Secretario determina que al contribuyente no le asiste la razón, procederá con la tasación del ajuste, pudiendo utilizar cualquier mecanismo que se le haya otorgado en ley para su cobro.

(c) Procedimiento ante la Secretaría de Procedimientos Adjudicativos. —

(1) Emitida la determinación del Secretario descrita en el párrafo (4) del apartado (b), el contribuyente podrá, dentro del término de treinta (30) días siguientes a la fecha del depósito en el correo de la notificación, solicitar revisión ante la Secretaría de Procedimientos Adjudicativos. En su solicitud, el contribuyente

podrá esbozar nuevas cuestiones de hecho y argumentos de derecho.

(A) La presentación de la solicitud de revisión ante la Secretaría de Procedimiento Adjudicativo será motivo suficiente para detener cualquier gestión de cobro por parte del Secretario, mientras dure el proceso de revisión.

(d) La Secretaría de Procedimientos Adjudicativos deberá **celebrar la vista administrativa formal y emitir su determinación dentro de los ciento ochenta (180) días a partir de la solicitud del contribuyente**. **De no emitirse determinación dentro del término otorgado**, **se darán como probadas todas las cuestiones de hecho presentadas por el contribuyente en su reconsideración.** Sin embargo, si el contribuyente solicita suspensión o transferencia de vista, éste renunciará a su derecho de que la determinación de la Secretaría de Procedimientos Adjudicativos se emita dentro del término de los ciento ochenta (180) días antes dispuesto.

(e) Las disposiciones de la Ley 170-1988, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme", regirán de forma supletoria el proceso expedito dispuesto en esta Sección.

III.

De entrada, cabe precisar que, al ejercer nuestra función revisora, debemos recordar que las decisiones de las agencias administrativas gozan de una presunción de legalidad y corrección, por lo que corresponde a la parte que las impugna demostrar que la agencia actuó fuera de los poderes delegados, erró en la aplicación del derecho, incurrió en arbitrariedad o lesionó derechos constitucionales fundamentales. *Rolón Martínez v. Supte. Policía*, supra, pág. 35; *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* supra. De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. *Torres Rivera v. Policía de PR*, supra, págs. 627-628.

En su primer señalamiento de error, la parte recurrente argumentó que, la OAADH erró al determinar que la suma de

$5,102,387.00, que recibió como parte de un acuerdo transaccional, constituyó un ingreso tributable. No le asiste la razón. *Veamos.*

La Sección 1031.01 del Código de Rentas Internas, *supra*, además de definir lo que es el ingreso bruto, establece las partidas que se excluyen de esta definición. En particular, excluye de tal definición las partidas provenientes de herencias, por tanto, estas partidas constituyen ingresos no tributables.

En lo pertinente, la doctrina establecida en *Lyeth v. Hoey, supra,* señala que cuando se impugna judicialmente la validez de un testamento, pero este culmina en acuerdo transaccional, la suma recibida por dicho acuerdo conservará su carácter de herencia. Ello así pues la naturaleza del pleito no cambia, y en ambos procesos se reconoce el derecho a heredar.

Surge claramente del expediente que la demanda que presentó la señora Segarra Boerman fue por violaciones a las leyes de crimen organizado, competencia desleal, incumplimiento en los deberes fiduciarios e incumplimiento de contrato. Todo lo anterior en relación con TF, compañía que recibió la mayoría de la herencia de Titín. Asimismo, surge de la demanda que la peticionaria alegó que Titín fue indebidamente influenciado para que cambiara su testamento. No obstante, no surge que el pleito fuese para impugnar la validez del testamento. En consecuencia, el acuerdo entre las partes del pleito no fue relacionado a la validez del testamento de Titín y tampoco a la capacidad de la señora Segarra Boerman como heredera. Así pues, el acuerdo transaccional no adjudicó derechos sucesorios, sino que puso fin a reclamaciones por conspiración y daños, relacionadas con el manejo de TF. Por lo cual, resulta forzoso concluir que la suma recibida en el acuerdo transaccional no es una redistribución de la herencia.

Respecto al segundo señalamiento de error, la parte peticionaria alegó que incidió la OAADH al no cumplir con los

términos impuestos en la Sección 6010.08 (D) y no emitir una determinación dentro del término de ciento ochenta (180) días. Arguyó que, como consecuencia, dicha Sección le impone a la agencia considerar las determinaciones de hecho del reclamante como probadas, lo cual sostuvo, no hizo la OAADH.

En ese sentido, es pertinente aclarar que, aunque se den por probadas todas las cuestiones de hecho presentadas por el contribuyente, ello no implica que de manera automática se conceda el remedio solicitado. No nos convencen los argumentos de la parte peticionaria, respecto a que la OAADH erró al no incluir como un hecho probado que, en la *Notificación de Ajuste de Planilla*, que se preservó la inclusión de la partida en el Formulario 480.6B, del Anejo IE para ingresos Excluidos y Exentos. Así como el no incluir que en la Planilla Federal de la señora Segarra Boerman se excluyó la suma en controversia como ingreso bruto. Arguyó que estos fundamentales para establecer que la partida reclamada constituyó un ingreso no tributable.

No obstante, surge de la *Resolución*, que la OAADH concluyó que, aun bajo la Sección 6010.08 (d), que toma como probadas todas las cuestiones de hecho, no se podía dar como un hecho probado que la suma recibida por la señora Segarra Boerman constituyó una herencia para fines contributivos. Tal conclusión es una de derecho, no se trata de una cuestión de hechos. Así pues, no se cometió el error imputado.

En ausencia de evidencia que rebata la presunción de legalidad y corrección que cobija la actuación administrativa, ni demostración de error de derecho, arbitrariedad o violación a derechos constitucionales fundamentales, concluimos que la OAADH actuó dentro de los poderes que le fueron delegados y conforme al estado de derecho vigente. Por consiguiente, procede confirmar la *Resolución* emitida por la OAADH.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

**De otra parte, levantamos la paralización decretada el 31 de marzo de 2026 y ordenamos la continuación de los procedimientos.**

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Marrero Guerrero disiente y hace constar las siguientes expresiones:

Disiento del resultado alcanzado pues considero que, tal como se expone en la discusión del derecho aplicable consignada en la Sentencia que hoy se emite, en Lyeth v. Hoey, 305 US 188 (1938), la Corte Suprema de los Estados Unidos estableció que para determinar si el ingreso producto de un acuerdo es herencia y por tanto un ingreso no tributable, el factor a evaluar será el reclamo original y no el acuerdo mediante el cual se resuelve la controversia. En atención a lo anterior, en dicho caso se concluyó que cuando el pago proviene de un derecho hereditario en disputa, para fines contributivos, debe considerarse como una adquisición por herencia y no como un ingreso tributable. En la Resolución recurrida, la Oficina de Apelaciones Administrativas del Departamento de Hacienda, parece reconocer la naturaleza del reclamo primario que culminó en la transacción, al expresar, en sus Conclusiones de Derecho, a la página 5, el origen de la controversia:

"Ello surge en el contexto de un litigio tramitado ante el tribunal federal, en el cual se impugnó la validez de la transferencia de la herencia del hermano a favor de Titín Foundation Inc., al

alegarse que el testamento fue producto de influencia indebida ejercida por los Demandados."

En vista de lo anterior, y considerada la totalidad del expediente, hubiera revocado la determinación recurrida.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones